verdict was doubtless due to the method adopted by counsel in presenting the evidence to the jury from the record of the previous trial rather than by living witnesses. It is the province of the jury and not of the court to assess the damages, and the court should not interfere upon this ground, unless the inadequacy be shocking. If, upon appeal, the present verdict be still thought to be contrary to the evidence, the Appellate Division may, and doubtless will, if it deems the plaintiff's proofs insufficient to support the action, dismiss the complaint on the ground that there appears no reasonable probability that the case could be changed in any material aspect on another trial. This was done in Brackett v. Griewold, a case in which that course was approved by the Court of Appeals. See 128 N. Y. 644, 28 N. E. 365.

Motion denied, and exceptions granted to both parties. Thirty days' stay and thirty days to make case allowed after service of notice of entry of judgment.

---

(168 App. Div. 457)

### CRANFORD v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. June 11, 1915.)

1. CONTRACTS ⬅️231—CONSTRUCTION CONTRACTS—RIGHTS OF CONTRACTOR.
 Where a contractor could not have finished the work within the time stipulated for, even had the owner not caused any delay, he could not recover the cost of machinery as an addition to the contract price to be gained in case he completed the contract at the stipulated time.
 [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1046, 1047, 1051, 1052; Dec. Dig. ⬅️231.]

2. CONTRACTS ⬅️301—CONSTRUCTION CONTRACTS—RIGHTS OF CONTRACTOR.
 Where a construction contract provided that the contractor should not be entitled to any claim for damages for any delay or hindrance from any cause during the progress of the work, the contractor could not recover compensation for delay, though caused by the necessity of a new plan for the work.
 [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1388–1397; Dec. Dig. ⬅️301.]

3. CONTRACTS ⬅️233—CONSTRUCTION CONTRACTS—RIGHTS AND LIABILITIES OF PARTIES.
 Where a railroad contractor fell into error because of mistakes made by the railroad company in placing proposed grade stakes according to the agreement, and thereby made an excess fill, and it was agreed that the excess fill should be removed and deposited at a place where the contractor had left a hole, the contractor was not liable for expenses incurred by the company permitting another contractor to fill up the hole, which disabled the contractor from carrying out the arrangement made.
 [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1098; Dec. Dig. ⬅️233.]

4. CONTRACTS ⬅️233—CONSTRUCTION CONTRACTS—RIGHTS AND LIABILITIES OF PARTIES
 A contract for a change in a railroad right of way, which provides that the railroad company shall employ necessary railroad men, and that their wages shall be charged to the contractor as part of the cost of the proposed work train services, and that the contractor shall pay to the company monthly the amount disbursed by the company for wages,

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

makes the sum paid by the railroad company for wages prima facie the just wages for which the company must be reimbursed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1098; Dec. Dig. ☞233.]

Appeal from Trial Term, Kings County.

Action by Charles Cranford against the Brooklyn Heights Railroad Company. From a judgment, both parties appeal. Modified and affirmed.

See, also, 163 App. Div. 961, 148 N. Y. Supp. 1111.

Argued before THOMAS, STAPLETON, MILLS, RICH, and PUTNAM, JJ.

Edward M. Grout, of New York City (James F. McKinney, of New York City, on the brief), for plaintiff.

John L. Wells, of New York City, and Charles L. Woody, of Brooklyn (Harold L. Warner, of New York City, on the brief), for defendant.

THOMAS, J. The action is based on a contract, whereby the plaintiff undertook between stated points to make a change in the right of way of defendant's railway. The work in its principal features demanded excavation for a part of the distance and filling for a part thereof, and the construction of a concrete wall on each side beyond the limit of the right of way, for which purpose the defendant procured easements. The contract also included the construction of depots and stations, and contemplated that the plaintiff should do extra work with methods of payment not necessary to state. Differences arose, involving numerous questions, and many items of recovery and counterclaim were considered by the Trial Term during a period of some 50 days. The subjects of inquiry were complex and most difficult of solution, but the facts were decided with such accuracy by the trial justice as to require slight modification. In some instances, usually relating to the interpretation of a single paragraph of the contract, this decision affects conclusions of law. Every item has been examined with attention, but advantage would not come from a discussion of the facts, and therefore, where the decision is modified, the item is named, and a brief statement of the reasons for allowing or disallowing the same are stated.

[1] But before taking up such items, it may be stated that the finding that the defendant may deduct the cost of the steam shovel and digger from the amount due the plaintiff is approved. The evidence shows that the plaintiff would not have finished the work by May 1, 1907, had there been no delay caused by the defendant. Upon such state of facts, the law does not permit the plaintiff to recover the cost of the shovel, which is, in fact, an addition to the contract price to be gained by him in case he should complete the contract at the stipulated time. In other words, he cannot contribute so effectively to the delay as to prevent his finishing in time, and have the reward that could be earned only by such due completion. The eighty-ninth finding of fact, that, "The contractor substantially completed the contract work

within the time stipulated, as extended," should be modified to read, "The contractor substantially completed his contract by August 10, 1907, save in respect to items for which allowances have been made to defendant." Other findings, if needed, to conform the decision to this memorandum, will be made.

*Cause II, Item 1: Reinforced Concrete at Newkirk Avenue, $2,288.90.*

This item should be disallowed. It is decided: First, that the evidence shows that the work was not reinforced concrete within the contemplation of the contract; second, that it was the function of the engineer to decide whether it was such reinforced concrete; third, that, in the absence of other evidence of the reasonable value of the work, the plaintiff should be awarded the sum fixed by the engineer, to wit, $14.85.

*Cause II, Item 3: $1,169.52.*

The recovery should be at the rate of 3 cents a pound, instead of 5½ cents a pound. The contract fixes a price of 5½ cents per pound for steel columns, "including column base and anchor bolts." The grillage rails were not a part of the cast-iron base, but of the concrete foundation. Although the original plans did not show such grillage in the concrete foundation of the canopy columns, the working plans did show the same. The cast-iron base is something that is placed upon a concrete foundation and affixed thereto, while the steel rails or grillage are set in and made a part of the concrete foundation upon which the column base rests.

*Cause III, Item 1: Moving Derrick to Sandpit, $180.70.*
*Cause III, Item 2: Moving Derrick from Sandpit, $264.75.*

These items are disallowed for the reason that the new contract for the Foster avenue sewer was not only substituted for the original contract in that respect, but also in full discharge of all claims on the part of the contractor arising out of the construction of the sewer and of his original contract. This conclusion is aided by considering the manner of arriving at the sum that would be paid the plaintiff for the work and material under the new contract.

*Cause III, Item 3: Delay to Derrick North of Foster Avenue, $11.00.*
*Cause III, Item 4: Delay to Derrick at Luck's Hotel, $27.50.*

[2] These items should be disallowed, as they fall within section 12 of the contract, which provides that plaintiff "shall not be entitled to any claim for damages for any hindrance or delay from any cause whatever, during the progress of the work."

*Cause III, Item 9: Nonremoval of Trolley Pole, Causing Delay, $29.12.*

The conclusion allowing this item is reversed for the reason that it falls under section 12 of the contract above noted.

*Cause III, Item 12: Delay at Schmidt Building, $42.25.*

The conclusion allowing this item is reversed as falling within section 12 of the contract.

*Cause IV, Items 13 and 14: Delay after Inspection of Derailed Locomotive, $3.25; $43.30.*

These items are disallowed as falling under section 12 of the contract.

*Cause IV, Item 73: Delay Due to Bracket Arms, $93.51.*

This item is not recoverable under section 12 of the contract.

*Cause IV, Item 1: Hand-mixing at Foster Avenue, $1,082.47.*

The conclusion allowing this finding is reversed. The demand grows out of delay which was caused by the necessity of a new plan for the Foster avenue sewer, respecting which a new, particular contract was made with the plaintiff. The plaintiff was hindered from continuing the wall when, in his progress northward, he approached the locality, and such hindrance delayed him to a time when a condition of the work created by himself precluded the use of the machine for concreting; hence the matter falls within section 12 of the contract, which disables plaintiff from recovering damages arising out of hindrance or delay from any cause. Moreover, the cause of action, if any, takes its rise from the interruption of the performance of the main contract. The substituted, particular contract for the sewer discharged all claims from such cause.

*Cause IV, Item 42: Cost of Trucking to Wall above Avenue H, $342.*

It is quite inconsistent to allow this item and to disapprove of items 18, 20, and 40 of Cause IV. I discover no finding of fault on the part of the defendant which justifies its allowance, nor am I satisfied that the evidence would justify such a finding. Indeed, the finding would not be in harmony, I think, with the findings of the court respecting the matter out of which this claim grows.

Respecting the items disallowed the plaintiff, it is considered that finding 471 (Cause IV, Item 21; Material on Wood-Harmon Company Land), that it cost the contractor 26 cents per cubic yard more to haul the earth to raise the grades at Foster avenue and East Sixteenth street than it would have cost to place the material diverted to the Wood-Harmon property, is not sustained by the evidence, although the evidence does show that there was an increased cost, and therefore finding 475, that plaintiff was not put to any extra expense and did not suffer any damages by reason of said earth on said Wood-Harmon Company's property, is reversed

[3] Respecting the items allowed in the defendant's counterclaim, I find no error, except the item for *Excess Fill in Embankment, $602.89.* Had the defendant placed the proposed grade stakes according to its agreement, the plaintiff would not, in the first instance, have fallen into error; and, while the mistake might have been corrected by sighting along the embankment between the two abutments at Avenues N and O, yet this was placing upon the contractor a responsibility which he did not assume. In any case, the plaintiff had left a hole near the Avenue N abutment, and it was agreed between the parties that the excess fill should be removed by depositing it at that place. Notwithstanding that arrangement, the defendant, after requiring the contractor's attention in another place, permitted another contractor to fill up the hole, thereby disabling the plaintiff from carrying out the arrangement that had been made. It is not equitable that the plaintiff should bear the expense, inasmuch as the defendant initially and finally contributed to the condition. This item should be disallowed.

[4] The counterclaim for the wages of switchmen and pilots should be allowed at the sum of $4,520.04, less the sum of $292.50. Section 134 of the contract provides that the defendant shall employ the necessary switchmen, flagmen, pilots, and inspectors, "but their just wages will be charged to the contractor as part of the cost of the proposed work train service." Section 140 provides:

"The contractor will pay to the railroad company on or before the 15th day of each month the amounts disbursed by it during the previous month for: First. The actual amount disbursed by the railroad company in wages for inspectors, flagmen, switchmen and pilots, * * * and any other items not herein specified that are necessary for the safe and proper operation of trains used in the prosecution of the work."

The agreement that the plaintiff should pay the "actual amount disbursed" makes the sum so paid prima facie the just wages for which the defendant should be reimbursed. The intention was to secure to the contractor transportation of spoil over defendant's tracks at the actual cost to the defendant, "and to secure to the railroad company reimbursement of all expenditures made directly or indirectly by reason of the progress of the work by the contractor." Section 143 of the contract so provides. No distinction is made between the trains of the defendant and the trains of the plaintiff, where both used the track. Where the work required the classes of men included in the contract by reason of the progress of the work by the contractor, he must bear the expense of such persons, although both he and the defendant used the track for their trains. Such expenditure was not required, except where the trains were limited for a period of time and space to a single track. It is quite evident that, under such condition, pilots and switchmen were essential. But, among other things, the plaintiff answers that there would have been no occasion to use a single track, had not the defendant been in default in particulars mentioned, notably in failing to get consents for placing a track on the whole of the east easement. This argument suggests some assumptions of fault on the part of the defendant that did not, I think, exist, and ignores the agreement on the part of the plaintiff to place the single track where it was located and used. The item of $292.50 is disallowed for the reason that the plaintiff did not use the single track concerning which the expenditure was made. The items of disbursement for patrols are disallowed, for the reason that finding 92 shows that there were imposed upon them duties that fell upon the plaintiff, and for which defendant could not be substituted, under section 104 of the contract, without the interposition of the engineer and the failure of the plaintiff to observe his directions.

The judgment should be modified in accordance with this opinion, and, as so modified, affirmed, without costs. All concur.